## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* WILSON.

### Opinion delivered November 30, 1914.

1. RAILROADS—INJURY TO STOCK—FENCE.—A railway company is under no duty to construct and maintain a fence along its right-of-way to prevent cattle that are pastured upon the commons from going upon such right-of-way. The owner of cattle who permits the same to run at large, assumes all the risks incident thereto.

2. RAILROADS—INJURY TO STOCK—FOOD ON RIGHT-OF-WAY.—A railroad company which allows feed stuffs to be emptied or to accumulate upon its right-of-way in such a manner as to be attractive to cattle browsing upon the commons, is guilty of negligence, and will be liable in damages to the owner of animals that are injured by reason of such negligence.

3. RAILROADS—INJURY TO STOCK—DEFECTIVE FENCE.—Where a railroad company negligently permitted the fence enclosing its right-of-way to become so out of repair that cattle were injured thereby in attempting to reach feed stuffs placed upon the right-of-way in proximity to the defective fence, the railroad company will be liable in damages to the owner for such injuries.

4. RAILROADS—INJURY TO CATTLE—DEFECTIVE FENCE—SUFFICIENCY OF EVIDENCE.—In an action against a railroad company for damages for an injury to a cow, the animal being injured by a defective fence, while attempting to reach feed stuffs left by defendant on its right-of-way, the evidence *held* insufficient to show any negligence on the part of defendant.

Appeal from Garland Circuit Court; *Calvin T. Cotham,* Judge; reversed.

STATEMENT BY THE COURT.

The appellee sued appellant for damages caused by an injury to his cow, alleging that "defendant negligently caused hay, grain and other feed stuff to be scattered upon and near the railroad track in quantities sufficient to induce and toll cattle upon said land, and that said cow was attracted and tolled to said land and railroad track. That said lands were surrounded by barbed wire attached to posts lying on the ground, some of the strands being two or three feet above the ground at places. That the barbed wire was so dangerously kept as to endanger stock that would be attracted or tolled on the land where said feed lay. That the cow became entangled in the barbed wire and was so permanently injured thereby as to unfit her for a milk cow." The appellant denied the allegations of negligence.

The testimony for the appellee tended to show that the cow was injured at a point north of Old Gibbs Mill. The first panel of the fence just north of the mill was entirely out. Directly across from there were three bottom wires in place. When the cow was discovered by the appellee, she was standing twenty or thirty feet off of the right-of-way. Appellee went to where she was standing and found flesh hanging on the barbed wires and milk scattered on the weeds and hay at about twenty or thirty feet from the fence. There were box cars on the siding there. Feed stuff and grain were emptied there and were laying on the right-of-way within ten or fifteen feet of the opening in the fence.

The section foreman testified that there was a spur track, called Giggs Spur, used to set out cars. When he found the fence out of repair, he tried to keep it in repair, but it was a hard matter because people cut the wires along the road. When he discovered the fence in that condition, he fixed it, or had it done. He did not know that the fence was out of repair at that place. After he was notified of the injury to the cow he made an investigation of the track the next day, and if there was any feed stuff scattered along there he didn't see it.

Another witness testified that he was yardman in August, 1912, at the time the cow was injured. It was his duty to repair the fence when it was down. The section foreman told him the fence was out of repair, and immediately after hearing about the cow being injured he repaired the fence. Some one had broken a post down and knocked the wires all loose. One wire had been cut, but not at this place. There was nothing wrong with the fence at the place where the cow was supposed to have been injured. It was out of repair about a hundred feet from there on the opposite side. Some people lived there and cut the wire to make a gate to come out.

There was testimony tending to show that the cow was unfitted by reason of the injury for a milk cow, and tending to show her value as a milk cow.

The appellant asked the court to direct the jury to return a verdict in its favor, duly objected and excepted to the ruling of the court in refusing such prayer, and made such refusal of the court one of its grounds for a new trial. The appellant also assigned as one of its grounds for a new trial, that the verdict was contrary to the evidence. From a verdict and judgment in favor of the appellee for $50, this appeal has been duly prosecuted.

*E. B. Kinsworthy, W. R. Donham* and *T. D. Crawford,* for appellant.

There is no liability shown. If the evidence had disclosed that appellant had created a condition in its fence which permitted the cow to get on the right-of-way, or had permitted such condition to exist for such a length of time that appellant would be held to have notice of it, and if it further had shown that appellant had placed food on its right-of-way which would attract cattle, a case of liability might have been made out. The evidence does not show how long the defective condition existed, but it does show that the foreman and the yardman both were on the lookout for defects in the fence, and that the people in the neighborhood were continuously cutting the fence. The proof does not show who put the feed ap-

pellee saw on the right-of-way, or when.  46 Ark. 207; 57 Ark. 16; 6 Pa. St. 472; 36 Ark. 607; 37 Ark. 593.

No brief filed for appellee.

WOOD, J. (after stating the facts). (1-2-3). The appellant was under no duty to construct and maintain a fence along its right-of-way to prevent cattle that were pastured upon the commons from going upon such right-of-way. The appellee, in permitting his cow to run at large, assumed all the risks incident thereto. *Railway Company* v. *Ferguson,* 57 Ark. 16. But the appellant would have no right to allow feed stuff to be emptied or to accumulate upon its right-of-way in such manner as would be attractive to cattle that might be browsing upon the commons. This would be luring such animals, by reason of their natural instincts, into places of danger; and if appellant did this, it would be negligent. If appellant permitted feed stuff to be placed upon its right-of-way in such manner as was calculated to attract cattle thereto, it would be liable for damages to the owner of animals that were injured by reason of such negligence. If appellant negligently permitted the fence inclosing its right-of-way to become so out of repair that cattle were injured thereby in attempting to reach feed stuff placed upon its right-of-way in proximity to the defective fence, the appellant would be liable in damages to the owner for such injuries. See *Jones* v. *Nichols,* 46 Ark. 207.

(4) Applying the above principles to the facts of this record, appellee, having the burden of proof, has failed to sustain the allegations of his complaint. There is no proof as to how long the defective condition in the fence had existed. There is nothing to show that the defective condition had existed for so long a time as to warrant the inference that appellant had notice of such defective condition and that it was therefore negligent in not having the same repaired before the alleged injury.

It was shown on behalf of appellant that the section foreman and the yardman, whose duties were to keep the fence in repair, did not know that the fence was out of

repair at that place until after the injury. They testified that people were continuously cutting the fence. For aught that appears to the contrary, the defective condition in the fence may have existed for so short a time that appellant, in the exercise of ordinary care, could not have repaired the same before the injury to the cow occurred. There is no proof on which to predicate a charge of negligence. Negligence under the circumstances would not be presumed but would have to be affirmatively shown.

For the error in not granting appellant's motion for a new trial, the judgment is reversed and the cause is dismissed.